The judgment of the Court of Civil Appeals is affirmed.

Opinion adopted by the Supreme Court.

## STATE v. SCHEPPS et al.
### No. 12148.

Court of Civil Appeals of Texas. Dallas.
Nov. 2, 1935.

William McCraw, Atty. Gen., and Jno. W. Pope, Jr., Pat M. Neff, Jr., Wm. C. Davis, and Ted Morrow, Asst. Attys. Gen., for the State.

E. M. Reichman, of Dallas, for appellees.

JONES, Chief Justice.

This is a suit in a district court of Dallas county, in the nature of a proceeding in rem, to forfeit to the state 90,000 cigarettes for the nonpayment of the cigarette tax levied against such merchandise. The proceeding is statutory, and the petition was filed in a district court of Dallas county. Julius Schepps was in possession of such cigarettes at the time of their seizure by R. D. Etter, an employee of the comptroller's department, and charged with the duty of enforcing what is known as the "cigarette tax law." Julius Schepps

was named as defendant in the forfeiture suit, and Mair Schepps intervened and claimed to be the owner of the cigarettes. The case was tried before the court without the intervention of a jury, and, at the close of the state's evidence, on motion of the attorney for the defendant and the intervener, judgment was entered in favor of the intervener and the state directed to deliver the cigarettes to such intervener on his placing the requisite stamps on the cigarettes. The state, which will be designated as appellant, has duly perfected an appeal, and the following are the necessary facts:

The proceedings hereunder are authorized by the provisions of chapter 241 of the Acts of the Regular Session of the Forty-Fourth Legislature (1935), Vernon's Ann.Civ.St. art. 7047c—1, Vernon's Ann.P.C. art. 131c—1. Under this act, taxes are levied on all intrastate dealers in cigarettes, and section 20 of said act (Vernon's Ann.Civ.St. art. 7047c—1, § 20) provides that: "All cigarettes on which taxes are imposed by this Act, which shall be found in the possession, or custody or within the control of any person, for the purpose of being sold or removed by him in fraud of the Cigarette Tax Law, and all cigarettes which are removed or are deposited or concealed in any place with intent to avoid payment of taxes levied thereon, * * * may be seized by the Comptroller, with or without process, and the same shall be from the time of such seizure forfeited to the State of Texas, and a proceeding in the nature of a proceeding in rem shall be filed in a Court of competent jurisdiction in the county of seizure to maintain such seizure and declare and perfect said forfeiture as hereinafter provided."

This section designates the procedure to be followed by the state in filing a petition, in a court of competent jurisdiction, to effect the forfeiture; to give notice to the person or persons who were in possession of the cigarettes at the time they were seized, and the character of judgment to be rendered; this section of the act provides for a speedy trial. The prescribed procedure in the instant case was followed, the trial had in the district court, and judgment entered releasing the cigarettes to Mair Schepps, on the condition that he place the tax stamps on the cigarettes.

The evidence disclosed that the cigarettes in question were shipped by the Interstate Tobacco Company from Neosho, Mo., to the town of Carrolton in Dallas county, to shipper's order, notify W. C. Wright; that Julius Schepps is nineteen years of age, and on June 22, 1935, was sent by his brother, Mair Schepps, from his home in Dallas to the Jefferson Hotel, with $495 with the instruction to meet there W. C. Wright and take from him an indorsed bill of lading for the cigarettes in question, and pay to him the $495; Julius Schepps had never met W. C. Wright, but, in obedience to these instructions, he went to the hotel and there, outside of the hotel, met W. C. Wright, took the indorsed bill of lading, and delivered to him $495; that on the afternoon of the same day he went in his brother's truck to the depot in Carrolton, presented the bill of lading, and signed the name of W. C. Wright to the receipts for the cigarettes; that he immediately backed his truck to the depot warehouse and loaded the cigarettes into the truck; that as soon as he had loaded them R. D. Etter, the representative of the comptroller's department, accosted him, took charge of the cigarettes for the purpose of making a reasonable inspection, and received from Schepps a copy of the receipt he had signed; that he was asked if he had stamps for the cigarettes, and he replied, "No," that they did not belong to him, but belonged to his brother, Mair Schepps, who had stamps in his house to cover the shipment; and that he was going to drive the truck to his brother's home, where the cigarettes would be immediately stamped.

Mr. Etter went with Julius Schepps to Mair Schepps' home, was informed by Mair Schepps that they were his cigarettes which he had purchased from Wright, and that he had the necessary stamps and was going immediately to put the stamps on the cigarettes, and then send them to Houston. Mair Schepps at once demanded delivery to him of the cigarettes for the purpose of stamping them. There is virtually no dispute in the testimony as to what took place between the parties at the time Julius Schepps signed the receipted bill and took charge of the cigarettes, until the cigarettes were finally taken over by Mr. Etter; nor is there any dispute in the testimony that Mair Schepps had the necessary stamps in his possession.

The signature of W. C. Wright, admittedly signed by Julius Schepps, and the signatures of W. C. Wright signed purportedly by W. C. Wright at the Morgan warehouse, previous to the transaction in question, were pronounced by a bank employee, who qualified as a handwriting expert, to be written by the same person. The clerk of the Morgan warehouse, who took the signature of W. C. Wright on various receipts, failed to identify Julius Schepps as the one who signed them. This clerk gave his opinion that the man claiming to be W. C. Wright was about thirty years of age; Julius Schepps described Wright, on the occasion of meeting him, as being a man of about fifty years of age; Julius Schepps was nineteen years of age. The evidence also discloses that Julius Schepps did not have any permit to sell cigarettes in 1935; that Mair Schepps had such permit, but that it expired on June 22, 1935, the day of the transaction in question.

Mair Schepps testified that, whenever he was "caught" by the agent of the comptroller, in charge of issuing the permits to sell cigarettes, he would take out a new permit, the said agent dating it back to the time the old permit had expired, and that he did not know that his permit had expired on June 22, 1935. Mair Schepps also testified to the effect that he only met W. C. Wright one time, that he came to Schepps' home a day or two before June 22, 1935, and told him he had a shipment of cigarettes from the Interstate Tobacco Company, en route to Carrolton, shipper's order, notify him, and that they there agreed on the purchase of the cigarettes; that on the morning of June 22d, he received a message over the telephone from Wright, to the effect that the shipment had arrived, and to meet him at the Jefferson Hotel, when they would complete the transaction; that he sent his brother Julius to the hotel with the money to the amount of the agreed price of the cigarettes, with instructions to deliver the money to Wright if he furnished him with an indorsed bill of lading; that he never intended to sell or offer for sale such cigarettes without first stamping them; and that he had stamps for such purpose, claiming that he bought them from the comptroller through the Oak Cliff State Bank, and that he called at the bank and got them, naming the employee of the bank from whom he got them.

This and other evidence that we do not consider material to the disposition of the case was developed by appellant in making out its case to forfeit the cigarettes.

Under section 20 of this act (Vernon's Ann.Civ.St. art. 7047c—1, § 20), cigarettes on which taxes are imposed can be forfeited only in the event they "shall be found in the possession, or custody or within the control of any person, for the purpose of being sold or removed by him in fraud of the Cigarette Tax Law, and all cigarettes which are removed or are deposited or concealed in any place with intent to avoid payment of taxes levied thereon." The testimony of both Julius and Mair Schepps is positive, to the effect that no unlawful act that would warrant a forfeiture was committed. If this testimony should be given credence, then no right rested in appellant to forfeit the cigarettes. These cigarettes, under this testimony, were in the possession of Julius Schepps for only a lawful purpose, i. e., to take them from the possession of the carrier to the home of the owner, Mair Schepps, and there immediately to have placed thereon the required stamps.

Tending to discredit this testimony are circumstances attending the transaction in securing delivery of the cigarettes at Carrolton. Among such circumstances are: (1) The unusual manner in which the sale of Mair Schepps was consummated and the indorsed bill of lading secured; (2) the fact that Julius Schepps did not sign his own name, but signed the name of W. C. Wright, the consignor, to receipts for the shipment; and (3) the fact that other signatures of W. C. Wright, relating entirely to other transactions, are pronounced by a handwriting expert to be in the same handwriting as is the signature written by Julius Schepps in Carrolton. However, these are only circumstances tending to discredit the testimony of Julius Schepps and Mair Schepps, and cannot be held to disprove the positive facts to which they testified. Such discrediting circumstances, we think, may have been sufficient for the trial court, whose duty it was to weigh the testimony, to disbelieve the positive testimony of Julius and Mair Schepps, and to enter a contrary judgment; but certainly these circumstances are not of sufficient potency to hold, as a matter of law, that they do discredit such positive testimony to such an extent as to warrant this

court in setting such evidence aside. At most, it can only be said that the evidence introduced by the state in this case was conflicting in respect to the material issues of fact decided, and the trial court heard the witnesses, considered their manner of giving testimony, weighed their testimony, and found in favor of appellee, and such finding is binding on this court.

It therefore follows that this case should be affirmed, and it is so ordered.

Affirmed.